# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HESHAM ISMAIL <br> 19 15th Street <br> Burlington, NJ 08016 <br><br> Plaintiff, <br><br> v. <br><br> IHI Power Services Corp. <br> 95 Enterprise; Suite 300 <br> Aliso Viejo, CA 92656 <br><br> & <br><br> Michael Petticord <br> 358 Devon Drive <br> Exton, PA 19341 <br><br> & <br><br> Francis McMenamin <br> 19 Crestview Drive <br> Holland, PA 18966 <br><br> & <br><br> Kyle Adler <br> 50 Energy Drive <br> Fairless Hills, PA 19030 <br><br> & <br><br> Steve Gross <br> 50 Energy Drive <br> Fairless Hills, PA 19030 <br><br> Defendants. | JURY DEMANDED <br><br> No. |

1

CIVIL ACTION COMPLAINT

And now Plaintiff, Hesham Ismail, by and through his undersigned counsel, files this Complaint alleging that his rights, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000d, *et seq.*; Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, *et seq.*; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*; have been violated and avers as follows:

PARTIES

A. The Plaintiff

1. Plaintiff, Hesham Ismail ("Ismail" or "Plaintiff") is an adult individual residing at 19 15th Street, Burlington, NJ 08016.

B. The Defendants

2. Defendant, IHI Power Services Corp. ("IHI Power Services") is a California corporation that operates a power plant located at 50 Energy Drive, Fairless Hills, PA 19030.

3. Defendant, Michael Petticord, is an adult individual with a residence and domicile at 358 Devon Drive, Exton, PA 19341.

4. Defendant, Francis McMenamin, is an adult individual with a residence and domicile at 19 Crestview Drive, Holland PA 18966.

5. Defendant, Kyle Adler, is an adult individual with a principal place of business at 50 Energy Drive, Fairless Hills, PA 19030.

6. Defendant, Steve Gross, is an adult individual with a principal place of business at 50 Energy Drive, Fairless Hills, PA 19030.

7. At all times, IHI Power Services met the statutory definition of an "employer" as defined by Title VII and the PHRA.

## JURISDICTION AND VENUE

8. This Complaint alleges discrimination on the basis of Ismail's ethnicity, national origin, and religion, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("TITLE VII"), 42 U.S.C. § 2000d, *et seq.*; Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*; and pendent state law claims arising under the provisions of the laws of the Commonwealth of Pennsylvania, to wit, the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

9. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

10. This Honorable Court has jurisdiction of this matter, case and controversy pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f).

11. Additionally, pursuant to 28 U.S.C. §1367, this Court has Supplemental jurisdiction to hear all of Ismail's claims arising under the Pennsylvania Human Rights Act ("PHRA").

12. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District.

## ADMINISTRATIVE PROCEEDINGS

13. On or about July 15, 2019, Ismail filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), which was docketed as PHRC Charge No. 2019-01829, alleging discrimination, retaliation and wrongful discharge from his employment due to the actions of Defendants, and dual filed with the Equal Employment Opportunity Commission ("EEOC"), which was docketed as EEOC Charge No. 17F-2020-60784.

14. Ismail has been advised of his individual right to bring a civil action by receiving a Notice of Rights from the EEOC, dated September 11, 2020 (attached hereto as Exhibit "A").

15. Ismail has exhausted the administrative remedies available to him, and all necessary and appropriate administrative prerequisites to the filing of this Complaint have occurred and been satisfied.

## OPERATIVE FACTS

### FACTS

16. In October 2015, Ismail was hired by Dominion Energy Inc. to work as an Engineer III at its power plant located in Fairless Hills, PA.

17. Ismail is Arabic, is from Egypt, and is a Muslim.

18. Ismail began working for IHI Power Services in mid-December 2018 while it took over ownership of the power plant in Fairless Hills, PA.

19. Ismail was qualified for his position as an Engineer III.

20. Ismail performed all of his job duties to IHI Power Services' satisfaction and without any complaint or issue.

21. As the new owner of the power plant, IHI Power Services offered its employees a retirement investment plan. In response, Ismail asked IHI Power Services for an ethical investment option beyond the funds offered in the standard plan that would be consistent with his Muslim faith.

22. On January 4, 2029 IHI Power Services declined to offer Ismail an alternative investment option.

23. Ismail then asked if the 6% 401k matching could be giving to him directly through his paycheck so that he could invest it on his own.

24. While IHI Power Services initially agreed to Ismail's suggestion, it soon backtracked and refused to offer any options for investment or give the 6% matching funds to Ismail to invest on his own prerogative.

25. When IHI Power Services acquired the power plant, it promoted Defendant Michael Petticord to the position of plant director.

26. Defendant Petticord publicly promoted "alt-right" ideology and conspiracy theories throughout everyday conservations with staff.

27. Shortly after Petticord's promotion, Ismail noticed a significant increase and harassment and hostility from key staff members in an effort to drive him from the company.

28. For instance, Defendant Francis McMenamim, who worked as a Maintenance Supervisor for IHI Power Services, involved himself in Ismail's work, undermined Ismail's authority by telling contractors to disregard Ismail's commands, challenged Ismail's decisions regardless of logic, criticized Ismail for things that were factually false due to McMenamin's lack of engineering knowledge, falsely blamed Ismail for past and even future mistakes that McMenamin thought would happen, publicly yell at and ridiculed Ismail for troubleshooting work issues, and ordered Ismail to undertake needless and counterproductive tasks.

29. Due to Defendant Petticord's public statements, Ismail was well aware of his far right views and knew that he would address and not help him with the harassment.

30. However, Ismail trusted that if he ever had clear undeniable proof of religious harassment, Defendant Petticord would step in and help as he is obligated to do as plant director.

31. On February 12, 2019, Ismail finally had that clear proof when Defendant

McMenamin referred to him as "Hesham Islam" in an email.

32. Ismail forwarded that email to Defendant Petticord and informed him that he was experiencing harassment by Defendant McMenamin.

33. Defendant Petticord responded by dismissing the comment as a typo despite "Islam" being spelled correctly and accurately describing Ismail's identity.

34. In an effort to prove to Defendant Petticord that the harassment that he was experiencing was real, Ismail began sharing with Defendant Petticord through emails examples of the harassment, discrimination, and hostile work environment as they were occurring over the next several days in the hopes that they would be taken seriously.

35. Defendant Petticord failed to respond to Ismail's complaints. Rather, Defendant Petticord did not discuss Ismail's allegations with him, or take any steps to help Ismail stop the harassment.

36. Rather, Defendant Petticord consistently sided against Ismail, rationalized the actions of his harassers, went out of his way to try to entrap Ismail to justify termination, and personally participated in the harassment.

37. For instance, when Ismail insisted that Defendant Petticord investigate an accusation of a safety violation made against him, Defendant Petticord actually falsified a witness testimony to support the accusation of a safety violation.

38. When Ismail confronted Defendant Petticord in email with proof that he falsified the witness testimony, Defendant Petticord downplayed the significance of the safety incident as minor and claimed he considered the matter closed.

39. On February 21, 2019, a week after initially reporting the religious harassment to

Defendant Petticord, Defendant Kyle Adler, and IHI Power Services' Human Resources Representative, flew out from California to the Fairless Hills, PA facility.

40. Ismail was called into a meeting by Defendant Petticord to meet with Defendant Adler.

41. During the meeting, Defendant Adler attacked and criticized Ismail for sending emails to Defendant Petticord regarding religious harassment and discrimination; and, in retaliation, terminated Ismail's employment.

42. On March 4, 2019 Ismail notified Steve Gross, IHI's Chief Executive Officer, that he was the victim of racial, religious, ethnic, and national origin discrimination. However, Gross defended Petticord's actions.

43. IHI Power Services withheld payment of a severance package and past bonus unless Ismail signed an agreement absolving Respondents from liability for religious discrimination.

44. Ismail did not sign the agreement.

45. Throughout his employment by IHI Power Services, Ismail had no performance or disciplinary issues.

## COUNT I
## TITLE VII - RACE DISCRIMINATION
## 42 U.S.C.A. § 2000e-2(a)
## Ismail v. IHI Power Services

46. Plaintiff incorporates the above paragraphs as if fully set forth at length herein.

47. Plaintiff's status as being Arab/North African/Middle Eastern places him in the protected class of race.

48. Plaintiff's membership in a protected class was motivating factors in IHI Power Services' decision to terminate his employment.

49. Plaintiff suffered disparate treatment by IHI Power Services, as set forth above.

50. As such, IHI Power Services' decision to subject Plaintiff's to adverse employment action employment is an unlawful employment practice under 42 U.S.C. § 2000e-2(a).

51. As a proximate result of IHI Power Services' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

52. As a result of the conduct of IHI Power Services' management, Plaintiff demands punitive damages.

53. Plaintiff demands attorney's fees and court costs under the Section 704(a) of the Title VII, 42 U.S.C. §2000e-3(a), *et seq*.

## COUNT II
## TITLE VII - NATIONAL ORIGIN DISCRIMINATION
## 42 U.S.C.A. § 2000e-2(a)
## Ismail v. IHI Power Services

54. Plaintiff incorporates the above paragraphs as if fully set forth at length herein.

55. Plaintiff's status as being from Egypt places him in the protected class of national origin.

56. Plaintiff's membership in a protected class was a motivating factor in IHI Power Services' decision to terminate his employment.

57. Plaintiff suffered disparate treatment by IHI Power Services, as set forth above.

8

58. As such, IHI Power Services' decision to subject Plaintiff to adverse employment actions is an unlawful employment practice under 42 U.S.C. § 2000e-2(a).

59. As a proximate result of IHI Power Services' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

60. As a result of the conduct of IHI Power Services' management, Plaintiff demands punitive damages.

61. Plaintiff demands attorney's fees and court costs under the Section 704(a) of the Title VII, 42 U.S.C. §2000e-3(a), *et seq.*

## COUNT III
## TITLE VII - RELIGIOUS DISCRIMINATION
## 42 U.S.C.A. § 2000e-2(a)
## Ismail v. IHI Power Services

62. Plaintiff incorporates the above paragraphs as if fully set forth at length herein.

63. IHI Power Services took adverse action against Plaintiff by terminating his employment on account of his religion.

64. Plaintiff's status as a Muslim places him in the protected class of religion.

65. Plaintiff's membership in a protected class was a motivating factor in IHI Power Services' decision to terminate his employment.

66. Plaintiff suffered disparate treatment by IHI Power Services as set forth above.

67. As such, IHI Power Services' decision to terminate Plaintiff is an unlawful employment practice under 42 U.S.C. § 2000e-2(a).

68. As a proximate result of IHI Power Services' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

69. As a result of the conduct of IHI Power Services' management, Plaintiff demands punitive damages.

70. Plaintiff demands attorney's fees and court costs under the Section 704(a) of the Title VII, 42 U.S.C. §2000e-3(a), *et seq.*

## COUNT IV
## TITLE VII - RETALIATION
## 42 U.S.C.A. § 2000e-2(a)
## Ismail v. IHI Power Services

71. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

72. At set forth above, Plaintiff made complaints about religious, racial, and national origin discrimination and harassing conduct in workplace and as such, Plaintiff was engaged in protected activity under Title VII of the Civil Rights Act.

73. IHI Power Services took adverse action against Plaintiff by terminating his employment.

74. As set forth above, Plaintiff's participation in protected activity was a motivating factor in IHI Power Services' decision to terminate his employment.

75. As such, IHI Power Services' decision to terminate Plaintiff's employment is a retaliatory action prohibited by the Civil Rights Act of 1964, §704(a).

76. As a proximate result of IHI Power Services' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

77. As a result of the conduct of IHI Power Services' management, Plaintiff demands punitive damages.

78. Pursuant to the Civil Rights Act of 1964, §704(a), 42 U.S.C. §2000e-3(a), *et seq.*, Plaintiff demands attorneys' fees and court costs.

**COUNT V**
**TITLE VII - HARASSMENT**
**42 U.S.C.A. § 2000e-2(a)**
**Ismail v. IHI Power Services**

79. Plaintiff incorporates all foregoing allegations as if they are stated in this Count in full.

80. Plaintiff had to endure pervasive and regular harassment from his supervisors and co-workers.

81. This harassment by Plaintiff's managers and co-workers detrimentally affected Plaintiff.

82. This harassment was motivated by Plaintiff's race, national origin, ethnicity, and religion.

83. The harassment by Plaintiff's supervisors would detrimentally affect a reasonable person for all of the reason stated herein, as the harassment and its results would cause decreased wages, pain, lost wages, and embarrassment and humiliation to a reasonable person.

84. The harassment of Plaintiff by IHI Power Services' employees was willful and intentional.

85. Despite Plaintiff complaining about these issues to his supervisors, no meaningful remedial action was taken with respect to the harassment.

86. This willful, intentional, and unlawful harassment and discrimination violates the laws and regulations of the United States, including without limitation, 42 U.S.C § 2000e, *et seq*.

## COUNT VI
## SECTION 1981 - DISCRIMINATION
## 42 U.S.C. § 1981
## Ismail v. Defendants

87. Plaintiff incorporates the above paragraphs as if fully set forth at length herein.

88. Defendants took adverse action against Plaintiff by unfairly and unequally curtailing his compensation on account of his race as well as creating a hostile work environment in an attempt to drive him from the company.

89. Plaintiff's status as being Arab/North African/Middle Eastern places him in the protected class of race.

90. Plaintiff's membership in a protected class was a motivating factor in Defendants' decision to subject Plaintiff to adverse employment actions.

91. Plaintiff suffered disparate treatment by Defendants, as set forth above.

92. Defendants subjected Plaintiff to intentional discrimination based on his race, ancestry, and ethnic characteristics. Specifically, Defendants' intentional discrimination was based on the fact that Plaintiff was born Arab.

93. Defendants' decision to harass Plaintiff and to subject him to adverse employment actions is an unlawful employment practice under 42 U.S.C. § 1981.

94. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

## COUNT VII
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951
Ismail v. Defendants

95. Plaintiff incorporates all the preceding paragraphs as if they were set forth at length herein.

96. Based on the foregoing, Plaintiff alleges that Defendants violated the Pennsylvania Human Relations Act ("PHRA") by subjecting him to discrimination on the basis of his race, ethnicity, national origin, and religion.

97. Plaintiff further alleges that Defendants violated the PHRA by retaliating against him for making complaints about unlawful discrimination and harassment.

98. Defendants' conduct caused Plaintiff to sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, mental

13

anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

99.As a result of the conduct of Defendants, Plaintiff hereby demands punitive damages.

100.Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* Plaintiff demands attorneys' fees and court costs.

**WHEREFORE,** Plaintiff, Hesham Ismail, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00 together with:

A. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages. Lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

B. Punitive damages;

C. Attorneys' fees and costs of suit;

D. Interest, delay damages; and,

E. Any other further relief this Court deems just proper and equitable.

**LAW OFFICES OF ERIC A. SHORE, P.C.**

BY: /s/ Brian M. Doyle (PA Id. 319475)
**BRIAN M. DOYLE, ESQUIRE**
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Attorney for Plaintiff, Hesham Ismail

Date: 9/30/2020

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.S § 4904, relating to unsworn falsification to authorities.

Sep 25, 2020

Date

Hesham Ismail (Sep 25, 2020 18:48 EDT)

Hesham Ismail