## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HESHAM ISMAIL | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | CIVIL ACTION |
| | : | No. 20-4801 |
| v. | : | |
| | : | |
| IHI POWER SERVICES | : | |
| CORP., et al | : | |
| | | |
| Defendant. | : | |

**May 25th, 2023**                                                      **Anita B. Brody, J.**

## <u>MEMORANDUM</u>

### I.    INTRODUCTION

In 2020, Plaintiff Hesham Ismail filed this employment discrimination suit against

Defendants IHI Power Services Corporation, Michael Petticord, Francis McMenamin, Kyle Adler,

and Steve Gross, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e *et seq*. and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §

951 *et seq*. ECF No. 1. A six-day jury trial was held from November 7, 2022, to November 15,

2022. The jury found for Mr. Ismail on his hostile work environment and retaliation claims, but

against Mr. Ismail on his religion and national origin discrimination claims. ECF No. 62.[1] The jury

awarded Mr. Ismail $40,000 in compensatory damages, and rendered an advisory verdict that Mr.

Ismail be awarded $110,000 in back pay. *Id.* The Court ultimately awarded Mr. Ismail $111,837.27

---

[1] The verdict was rendered against IHI Power Services Corporation, as well as against Michael
Petticord and Kyle Adler in their individual capacities under the PHRA. ECF No. 62. Francis
McMenamin and Steve Gross were dismissed from the case after the start of trial but before jury
deliberations began.

in back pay, resulting in a total award of $151,937.37. ECF No. 64.

Mr. Ismail seeks statutory attorney's fees in the amount of $298,171.00 and costs pursuant to Title VII and the PHRA in the amount of $5,366.89. *See* ECF No. 67-2; 67-3; 67-8; 72-2.[2]

## II.    LEGAL STANDARD

Under Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee. . . ." 42 U.S.C. § 2000e-5(k). The PHRA separately provides that a court may "award attorney's fees and costs" to a plaintiff who prevails at trial. 43 Pa. Stat. § 962. In addition to a reasonable fee award, "[s]uccessful civil rights litigants are entitled to reimbursement of 'costs' connected with litigating their claim as long as the costs are reasonably and necessarily incurred." *Middlebrooks v. Teva Pharmaceuticals USA, Inc.*, No. 17-CV-412, 2019 WL 936645, at *19 (E.D. Pa. Feb. 26, 2019) (Kearney, J.) (cleaned up).

## III.    DISCUSSION

### A. Attorneys' Fees

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is referred to as the "lodestar." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005), as amended (Nov. 10, 2005). Because the lodestar is presumptively reasonable, "[t]he party seeking [downward] adjustment has the burden of proving that an adjustment is necessary." *Rode*, 892 F.2d at 1183. "The district court cannot decrease a fee

---

[2] In his original motion for fees and costs, Mr. Ismail sought fees in the amount of $265,471.50 and costs and expenses in the amount of $5,222.39. He amended his petition in his reply to Defendants' response to account for additional time spent litigating the fee petition.

award based on factors not raised at all by the adverse party." *McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 150 (3d Cir. 2009) (quoting *Rode*, 892 F.2d at 1183).

Mr. Ismail has provided evidence of the reasonable hours worked and the billing rates claimed by his attorneys. In support of his petition, he has provided a timesheet with time entries for each task conducted by his attorneys. ECF No. 67-2. Defendants seek several adjustments to the lodestar. I consider each in turn.

### 1. The Court's discretion to award attorney's fees

In their response to Mr. Ismail's fee petition, Defendants emphasize that the award of any attorney's fees in this action is discretionary. Accordingly, Defendants argue that the requested fee award is unreasonably high in light of the results obtained. ECF No. 71 at 2.

Title VII vests district courts with the discretion to award "the prevailing party . . . a reasonable attorney's fee. . . ." 42 U.S.C. § 2000e-5(k). "[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotations omitted). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). Here, a jury found Defendants liable on Mr. Ismail's hostile work environment and retaliation claims. Mr. Ismail was awarded compensatory damages of $40,000 and back pay of $111,837.27. Accordingly, Mr. Ismail is a prevailing party.

In support of their position that the fees requested are unreasonably high, Defendants cite to *Pickens v. SEPTA*, No. 15-CV-1489, 2017 WL 3722427 (E.D. Pa. Aug. 29, 2017) (Brody, J.), in which the court used its discretion to reduce the requested lodestar amount from $385,051 to

$15,000. Defendants argue that *Pickens* is analogous to this case in that the plaintiff in that case prevailed at trial on his retaliation claim, but not on his discrimination claim. Like the plaintiff in *Pickens*, Mr. Ismail was unsuccessful on his direct discrimination claim. Accordingly, Defendants argue that a downward reduction of the magnitude in *Pickens* is called for in this instance.

Defendants' contention is unpersuasive. In *Pickens*, the jury awarded the plaintiff only nominal damages of $1.00 on a retaliation claim.[3] Here, on the other hand, the jury awarded Mr. Ismail a substantial verdict on both his retaliation and hostile work environment claims. In light of these significant differences between the two outcomes, a reduction of the magnitude in *Pickens* is not warranted. Mr. Ismail is entitled to a substantial fee award.[4]

### 2. Downward adjustment to the lodestar

Moving onto the lodestar calculation, Defendants argue that the Court should adjust the lodestar amount downward by 50% in light of Mr. Ismail's mixed success at trial. Because Mr. Ismail succeeded only on his hostile work environment and retaliation claims, Defendants contend that the Court should exclude from the lodestar calculation the time spent litigating his

---

[3] Defendants discuss at some length Justice O'Connor's concurrence in *Farrar v. Hobby*, 506 U.S. 103, 122 (1992), which the court cited to in *Pickens*. But *Farrar*, like *Pickens*, was about a plaintiff who won only nominal damages at trial. Accordingly, the factors enumerated in Justice O'Connor's concurrence in *Farrar* are inapposite to this case.

[4] Defendants argue in addition that a substantial fee award is not warranted because Mr. Ismail was offered $40,000 to settle the case before trial, the same amount the jury ultimately awarded him in compensatory damages. The Third Circuit has held "only that settlement negotiations *may* be relevant in measuring success" as "one factor to be considered in the award of fees," and that district courts are "free to reject such evidence . . . ." *Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009) (emphasis in original). As Defendants themselves acknowledge, the reason this case did not settle before trial is that Mr. Ismail demanded the termination of two individual Defendants as part of any settlement offer, a demand which Defendants rejected. ECF No. 70 at 3. Defendants also omit mention of the fact that, by going to trial, Mr. Ismail more than tripled his recovery through the Court's award of back pay. Accordingly, I decline to take the pretrial settlement negotiations into account in determining an appropriate fee award.

unsuccessful direct discrimination claim. ECF No. 71 at 9.

The Supreme Court has stressed that courts deciding whether to apply an across-the-board lodestar adjustment should pay close consideration to "the important factor of the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* Third Circuit guidance, in turn, provides that "[a]n adjustment for limited success 'should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar.'" *McGuffey v. Brink's, Inc.*, 598 F.Supp.2d 659, 673-74 (E.D. Pa. 2009) (Brody, J.) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

In support of their contention that the court should adjust the lodestar downward by 50%, Defendants cite to *Jones v. Pa. State Police*, No. 16-CV-4205, 2018 WL 2197226 (E.D. Pa. May 11, 2018) (Beetlestone, J.). In *Jones*, a civil rights action, the court found that a 50% lodestar reduction was "warranted to account for time spent litigating unsuccessful claims that were distinct from Plaintiff's otherwise successful . . . claim." *Id.* at *6.

In *Jones*, however, the court had dismissed or granted summary judgment on seven of the plaintiff's nine original claims before trial. Of the two claims that proceeded to trial – a hostile work environment claim and an aiding-and-abetting claim – the plaintiff succeeded only on the hostile work environment claim. In determining the proper lodestar adjustment, the court found that the unsuccessful aiding-and-abetting claim "was legally and factually distinct from Plaintiff's hostile work environment claim." *Jones*, 2018 WL 2197226 at *6.

Here, unlike in *Jones*, the distinction between Mr. Ismail's successful and unsuccessful claims is far murkier. Mr. Ismail was successful on two of his legal theories: the first, that he was subjected to a hostile work environment because of his religion or national origin; and the second,

that he was terminated in retaliation for complaining about the discriminatory treatment he faced. Although Mr. Ismail was not successful on a third legal theory, that IHI Power Services Corporation terminated his employment because of his religion or national origin, all three legal theories proceed from the same nucleus of fact and implicate the same set of legal actors. *See McGuffey v. Brink's, Inc.*, 598 F.Supp.2d 659, 673-74 (E.D. Pa. 2009) (Brody, J.) (finding unsuccessful direct discrimination claims "closely related" to successful retaliation claim because each claim involved "similar legal theories" under anti-discrimination laws and "all involved a common core of facts").

Nevertheless, because Mr. Ismail was unsuccessful on his direct discrimination claim, some degree of downward departure is warranted.

The Supreme Court has provided guidance that, in civil rights cases in which a plaintiff pursues separate claims that "involve a common core of facts" or are "based on related legal theories," "district court[s]" deciding attorney's fees petitions "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). In analogous cases in which plaintiffs have prevailed at trial on their hostile work environment and retaliation claims, but not on their direct discrimination claims, trial courts in the Eastern District have reduced the lodestar amount by a smaller percentage than the 50% Defendants call for. *See, e.g., McGuffey*, 598 F.Supp.2d at 674-75 (E.D. Pa. 2009) (Brody, J.) (ten percent); *Jodlowska v. Soar Corp*, No. 13-CV-2845, 2015 WL 1255968, at *3 (E.D. Pa. Mar. 18, 2015) (Bartle, J.) (ten percent); *Middlebroks v. Teva Pharmaceuticals USA, Inc.*, No. 17-CV-412, 2019 WL 936645, at *15-16 (E.D. Pa. Feb. 26, 2019) (Kearney, J.) (four percent).

By succeeding on two of his three claims at trial and receiving a substantial award of

compensatory damages and back pay, the "overall relief" Mr. Ismail has obtained is significant. *Hensley*, 461 U.S. at 435. I will compensate for his mixed, but still substantial, success with a ten-percent reduction to the lodestar to be applied after the lodestar is calculated.

### 3.  Reasonable hourly rates

Next, Defendants challenge the hourly rates billed by three of Mr. Ismail's attorneys: Kathleen Redpath-Perez, Briana Pearson, and Brian Doyle. ECF No. 71 at 10.

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (citing *Blum v. Stenson*, 465 U.S. 886 (1984)). To make this determination, "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citation omitted). "The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) (citations omitted). As the prevailing party, Mr. Ismail bears the burden of producing "satisfactory evidence in addition to the attorney's own affidavits that the requested hourly rates . . . meet this standard." *Maldonado*, 256 F.3d at 184 (cleaned up).

The Third Circuit has endorsed the fee schedule promulgated by Community Legal Services of Philadelphia ("CLS") as "well developed" and "a fair reflection of the prevailing market rates in Philadelphia." *Maldonado*, 256 F.3d at 187-88. Because the fee schedule was most recently updated in July 2018, some district courts in the Third Circuit have also adjusted the CLS fee schedule rates upwards to account for inflation. *See, e.g. Earley v. JMK Associates*, No. 18-CV-760, 2020 1875535, at *2 (E.D. Pa. Apr. 15, 2020) (McHugh, J.) (adjusting hourly rates by

five percent annually). I will take such an adjustment into account in fixing appropriate hourly rates.

I consider each of Defendants' objections in turn.

   a)  *Kathleen Redpath-Perez*

Defendants argue that the hourly rate for Ms. Redpath-Perez's time should be fixed at eleven years of experience, rather than thirteen years. Defendants contend that Ms. Redpath-Perez is not entitled to bill at the hourly rate for thirteen years of experience because she has only been employed in civil practice for three-to-four years, and most of her thirteen total years of experience were spent as a public defender. ECF No. 71 at 11.

Ms. Redpath-Perez entered her appearance on October 31, 2022, less than two weeks before the beginning of trial. ECF No. 41. Her chief contribution to Mr. Ismail's case was her trial advocacy skill, honed through extensive past courtroom experience. *See* Affidavit of Kathleen Redpath-Perez, ECF No. 67-4 ¶¶12-21. This experience is relevant whether she acquired it representing criminal defendants or civil rights plaintiffs. Defendants cite no authority for the proposition that hourly rates should be fixed according to years spent in a specific field of law, as opposed to total years as a practicing attorney. Accordingly, I find that a billing rate of $410.00 per hour reflecting her thirteen years of experience is proper. With a five-percent annual increase accounting for four years of inflation, Ms. Redpath-Perez's hourly rate will be fixed at $500.00 per hour.

   b)  *Briana Pearson*

Next, Defendants argue that Ms. Pearson's hourly rate should be fixed at three years of experience, which is lower than her requested hourly billing rate of $390.00 per hour. ECF No. 71 at 10. Defendants are correct that, given her three years of experience as a practicing attorney, her

requested rate is in excess of the hourly market rates. The sworn affidavit of Richard S. Swartz, Esquire (ECF No. 67-5) attesting to the reasonableness of Ms. Pearson's hourly billing rate is not, on its own, sufficient to meet Mr. Ismail's burden of producing "satisfactory evidence" that Ms. Pearson's requested rates are reasonable. *See Maldonado*, 256 F.3d at 184. Accordingly, I find that the CLS fee schedule billing rate of $250.00 per hour reflecting her three years of experience is proper. With a five-percent annual increase accounting for four years of inflation, Ms. Pearson's hourly rate will be fixed at $300.00 per hour.

Ms. Pearson billed 197.90 hours in total. ECF 67-4. Upon recalculation of her total fees at the new hourly rate, the lodestar is reduced by $15,832 ((390 * 197.9) – (300 * 197.9)).

### c) Brian Doyle

Lastly, Defendants argue that Mr. Doyle's proposed hourly rate should be fixed at $375.00 per hour, the prevailing market rate for attorneys with eleven years of experience. ECF No. 71 at 10. However, this hourly rate fails to take inflation into account. Accordingly, Mr. Doyle's proposed hourly rate is reasonable and his hourly rate will be fixed at $400.00 per hour.

### d) Eric Shore and Scott Johnson

Defendants do not object to the rates proposed for Mr. Shore and Mr. Johnson. Accordingly, Mr. Shore's hourly rate will be fixed at $650.00 per hour, and Mr. Johnson's will be fixed at $500.00 per hour.

### 4. Hours spent

Finally, Defendants argue for several reductions to the number of hours billed by Mr. Ismail's attorneys as excessive.[5]

---

[5] Defendants reiterate that the hours billed for trial preparation would not have been necessary had the case settled beforehand. Here, as earlier, I decline to take settlement negotiations into account in determining a proper fee award for Mr. Ismail's trial victory. *See supra* n.4.

"In calculating the hours reasonably expended, a court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (cleaned up). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

### a) Reduction of multiple paralegal charges

Defendants' first proposed reduction is a reduction of paralegal charges for duplicative efforts generating a useable set of trial exhibits. Over the course of the six-day trial, Mr. Ismail's attorneys submitted four amended binders of exhibits due to various mistakes made in their preparation. Ms. Redpath-Perez acknowledges "that the court could cut some of the time spent by staff correcting errors in how the binders were put together," but contends that "none of [her] hours should be cut for this purpose because [she] had nothing to do with the binders being assembled incorrectly." ECF No. 72-1 at 2.

Because the binders had to be redone due to a series of errors in their production, many of the hours charged by Mr. Ismail's paralegals during the trial are "excessive, redundant, or otherwise unnecessary." *Maldonado*, 256 F.3d at 184. Accordingly, upon consideration of the reductions in paralegal charges proposed by Defendants in Exhibit "F" to their response to the fee petition (ECF No. 71-4), I will deduct 60 hours from the hours billed by Mr. Ismail's paralegals, whose time was billed at an hourly rate of $150.00 per hour. The lodestar is reduced by $9,000 (150 * 60).

I address Ms. Redpath-Perez's hours with respect to the binders separately below.

> b)  *November 8 and November 9, 2022 (21 hours), November 13, November 14*
>
> *(20.3 hours and 21.3 hours)*

Next, Defendant's propose reductions to the hours billed for four days on which Kathleen Redpath-Perez billed in excess of 20 hours. Defendants argue that these time entries likely include travel time, and that even if these entries are "believable," many of the hours billed would necessarily have been spent correcting exhibit binders. They propose a reduction of ten hours per day.

Regardless of whether the time entries are accurate and credible, as Ms. Redpath-Perez insists they are, the hours billed are in excess of what is required for successful trial preparation. To give one example, on November 8 Ms. Redpath-Perez's co-counsel, Ms. Pearson, billed 15.10 hours, which Defendants have not challenged. Additionally, because the time entries are not broken out into specific identifiable tasks, there is a high probability that some of this time was spent preparing unnecessary exhibit binders. Whether or not responsibility for the mistakes made in preparing the binders falls on Ms. Redpath-Perez's shoulders, any hours spent correcting them are clearly redundant and unnecessary. Although the lodestar should account for necessarily extensive trial preparation, it must not include unnecessarily excessive hours. I will reduce the number of hours billed by Ms. Redpath-Perez 25 hours to account for the excess time billed on these four days. The lodestar is reduced by $12,500 (500 * 25).

> c)  *Duplicate entries*

Defendants' third contention is that Ms. Redpath-Perez's bills for November 11 and November 12, 2022 were duplicate entries. On November 11, 2022, Ms. Redpath-Perez billed 17.58 hours for "Trial work, prep of closing, cross-examination of Mike Petticord, and texts/calls with PG and BP." On November 12, 2022, she billed 17.20 hours for "Trial prep. Prep of cross-

examination for Mike Petticord and closing arguments. Texts with PG, ES, and BP." Although these time entries are similar, they are adequately documented and not clearly unreasonable. The cross-examination of Mr. Petticord was integral to Mr. Ismail's success at trial, and required a thorough understanding of the evidence in the case obtained through extensive preparation. I will not reduce the lodestar on this ground.

      *d)  Lack of specificity*

Finally, Defendants argue that the fee petition is not specific enough for the Court to determine whether the hours billed are reasonable. The Third Circuit has held that time entries must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Phila. Cty. Ct. of Com. Pl.*, 89 F.3d 1031, 1037 (3d Cir. 1996) (internal quotations omitted). "[A] fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.' However, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) *(*citing *Lindy Bros. Builders, Inc. of Philadelphia,* 487 F.2d 161, 167 (3d Cir. 1973)*).*

Ironically, because Defendants have not proffered any examples of time entries which fail to meet this standard, their contention is not specific enough to allow the Court to find in their favor. Upon review of the fee petition, Mr. Ismail's time entries meet the Third Circuit's standard for specificity. Accordingly, I will not reduce the number of hours on grounds of lack of specificity.

**5.  Time spent preparing the fee petition**

Courts may, in their discretion, award reasonable attorney's fees for successfully litigating

a fee petition. *Federal Trade Com'n v. Circa Direct LLC*, 912 F.Supp.2d 165, 177 (D.N.J. 2012); *Student Public Interest Research Group of New Jersey, Inc. v. AT&T Bell Laboratories*, 842 F.2d 1436 (3d Cir. 1988); *David v. City of Scranton*, 633 F.2d 676 (3d Cir. 1980). *See also Hines v. City of Albany*, 862 F.3d 215 (2d Cir. 2017) (attorney's fees can include time spent preparing fee petition). Any hours submitted as part of a request for such fees, however, must still be "reasonably expended" and not "excessive, redundant, or otherwise unnecessary." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (cleaned up). The Third Circuit has provided guidance specifically pertaining to fee petition litigation that "hours are excessive if they represent more time than is reasonably necessary to complete the task." *Rode v. Dellarciprete*, 892 F.2d 1177, 1192 (3d Cir. 1990) "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Here, Mr. Ismail has submitted time entries totaling $32,699.50 for 75.75 hours of attorney work for preparing the fee petition. These time entries are both unreasonably high and extremely vague. Accordingly, the do not meet the Third Circuit's standard for either specificity or reasonableness. I will therefore reduce the award for time spent preparing the fee petition by 75%. The lodestar is reduced by $25,524.62.

## B. Costs

As to the issue of recoverable costs, Defendants argue that some of the expenses listed by Mr. Ismail in his petition are not recoverable under 28 U.S.C. §1920, the statute outlining taxable costs. However, courts in the Third Circuit have held that prevailing plaintiffs in civil rights actions are entitled to recover reasonable costs and expenses beyond the costs specifically listed at 28 U.S.C. §1920 provided those expenses are both documented and reasonably necessary. *See Becker v. ARCO Chemical Co.*, 15 F.Supp.2d 621, 635 (E.D. Pa.

1998) (Robreno, J.); *Petrunich v. Sun Bldg. Systems*, 625 F.Supp.2d 199, 211 (M.D. Pa. 2008);

*Kratzer v. Wegman's Restaurant, LLP*, No. 04-CV-05889, 2005 WL 2847320, at *2-3 (E.D.

Pa. Oct. 27, 2005) (Stengel, J.). Accordingly, I will award Mr. Ismail the full requested amount

of costs and expenses totaling $5,366.89 as they were both documented and reasonably

incurred in the litigation.

## IV.    CONCLUSION

For the reasons set forth above, I will grant Mr. Ismail's motion for an award of

reasonable attorney's fees and costs.

In summary, the original lodestar of $298,171.00 is reduced as follows:

- $15,832.00 (Briana Pearson's excessive hourly rate);

- $9,000.00 (excessive hours spent preparing new binders);

- $12,500.00 (excessive hours spent on trial preparation by Kathleen Redpath-Perez);

- $24,524.62 (excessive hours spent preparing fee petition).

Accounting for these reductions, the lodestar is $260,814.48.

Applying a further ten-percent reduction to the lodestar to account for Mr.

Ismail's mixed success at trial, the final fee award to be awarded to Mr. Ismail is

**$234,733.03**. Costs and expenses are to be awarded to Mr. Ismail in the amount of

**$5,366.89**.

      **S/Anita B. Brody**
      ANITA B. BRODY, J.

Copies **VIA ECF** on  _____